May 16, 1910.

Nos. 4948 and 4949.

(Court of Appeal, Parish of Orleans.)

## BATTALION WASHINGTON ARTILLERY vs. ST. CHARLES SKATING RINK COMPANY ET AL.

Pierson, Walton & Pierson for plaintiff and appellee.

D. Sessler, Lazarus, Michel & Lazarus for defendant and appellant.

GODCHAUX, J.—Plaintiff leased to the defendant, the St. Charles Skating Rink Company, a portion of its building consisting principally of the upper floor, under a two years' lease which, by agreement, was to expire on

August 1, 1908, and this suit is against the defendant as maker and the other defendants as indorsers of a note representing the rent for the last month of the lease—namely, July, 1908. The defense denies liability upon the note, and is coupled with a reconventional demand for the value of certain improvements which the lessee made upon the premises during the term of the lease.

Liability upon the note is denied by the lessee upon the claim that on July 25, 1908, it was evicted from the premises and the acts which are urged as constituting this eviction are as follows: The premises leased had not been used by the lessee for some time, but, on the above date—that is, about a week or ten days prior to the termination of the lease, the representative of the lessee visited the premises and found several tents and flies spread upon the floor for the purpose of being dried. The windows and doors were likewise found open, and, moreover, the floor had been spaced off by chalk marks. It is shown that the tents and flies, belonging to the plaintiff, a military organization, had been placed there by the custodian of the building in the employ of plaintiff, and without the consent of the lessee. This custodian states that he did this without the knowledge of or authority from the plaintiff corporation or any of its officers and upon his own initiative. He likewise states that he did so, thinking that, as the hall was unoccupied and not used by the lessee, the latter would have no objection to his action. The chalk marks upon the floor were undoubtedly the acts of third persons not connected with plaintiff or defendant. The lessee's representative, upon discovery of tents, etc., upon the floor, protested to the custodian who communicated at once with the official representative of the plaintiff, with the result that the latter hurried to the hall and, arriving there previous to the departure of the lessee's representative, in his presence ordered and secured the immediate removal of the

tents and flies. The lessee was not satisfied and insisted that the lease had been violated and canceled by the acts complained of and thereupon tendered the keys of the premises to the plaintiff, which tender was peremptorily refused. The discovery of the disturbance complained of, the protest against it and its immediate abatement, etc., all transpired in the space of a few hours.

Such are the facts upon which the plea of eviction is based. It is unnecessary to discuss whether or not the act of a minor employee, such as the mere custodian of plaintiff's building, would be of such authoritative force as to subject his employer to the penalties arising from a violation of its contract of lease, for this Court is satisfied the acts complained of are insufficient to justify a decree annulling the lease.

At most these facts exhibit a trespass upon the leased premises, neither the effect of which, nor the intention with which they were committed, are such as to accomplish an actual or constructive dispossession of defendant. Not a mere trespass and nothing more, but something of a grave and permanent character, done by the landlord with the intention of depriving the tenant of the enjoyment of the premises must occur in order to give rise to such a condition of affairs as would entitle the lessee to be freed from his engagement.

The interference with the tenant's enjoyment must not only be substantial, but must be accompanied with clear indication of an intention that the lessee shall no longer hold or enjoy. Neither in our own reports nor in those of other jurisdictions are we aware of a case where the lease has been canceled or annulled when these elements are lacking. The defendant has confined his prayer to one of cancellation and has not asked for damages for the disturbance of its possession. Consequently the judgment is correct in denying defendant's prayer for cancellation and in giving plaintiff judgment for the rent.

By way of reconvention defendant claims the value of certain improvements in the form of electrical installation consisting of electric wiring running through insulated tubes attached to the walls, ceilings, etc., claimed to be worth $2,000, but shown to have cost $1,100.

The lease provides that "all improvements of a permanent nature or character are to remain in the building at the conclusion of this contract and to become the property of the Battalion."

Under Revised Civil Code 2726, the lessee has the absolute right to remove the improvements and additions made by him on the leased property, except in cases where these improvements and additions are made with lime and cement, in which latter event the landlord has a right to retain the improvements upon paying for same.

In the present instance, however, these codal provisions have no bearing for the contract enacts a different rule for the government of the respective rights of the parties; and by the provisions of this contract if the improvements in question are of a permanent nature or character the plaintiff has a right to retain them without cost.

A determination of this right hinges upon the meaning of the word "permanent" and if we turn to Articles 468 and 469, Revised Civil Code, which treat of improvements made by the owner, we find that such improvements are deemed to be permanent when they cannot be removed "without being broken or injured, or without breaking or injuring the part of the building to which they are attached." Should we apply this rule, the facts in the record disclose that the installation as a whole or as a system cannot be taken down for the purpose of replacing it elsewhere in its entirety. We, likewise, find that the principal cost of the installation covers the labor in-

volved, it being shown that the total cost was $1,100, of which the value of the materials when new did not exceed $100.00, the balance being labor. It was further shown that the materials composing the system, after removal, would not be worth more than $75.00, while the cost of removing it would exceed that sum. From this it is clear that if we adopt the codal definition of "permanent" as applied to these improvements, the value of the latter would be wholly destroyed by removal. There is likewise considerable testimony to show that the building to which this installation is attached would suffer considerable injury should a removal be attempted.

Then again the greater part of the testimony produced upon the trial was for the purpose of showing the meaning of the word "permanent," as distinguished from "temporary," when employed with reference to electrical installation by those versed and engaged in that trade or profession. And by this evidence it is satisfactorily shown that the improvements in question would be considered permanent and not a temporary installation. Again if we apply the ordinary definition of the word we find from the evidence that these improvements are fixed, lasting and enduring in character and use, and, moreover, in as much as the cost of their removal would exceed their worth when removed, it is not difficult to apply the definition of permanent as meaning what is intended to remain; for the tenant can be presumed to have intended to allow to remain that which it would not be worth his while to remove.

The Court is satisfied that this improvement is of a permanent nature and character in the sense of the contract involved, and consequently in rejecting the demand for the value of these improvements the judgment of the lower Court was correct.

But, in addition to the electrical installation, the de-

fendant claims in reconvention the sum of $100 as representing the value of an iron railing which had been installed by it as tenant and which the plaintiff, upon a formal demand, had declined to permit to be removed. It is conceded in this court by plaintiff that this iron railing is not an improvement of a permanent nature or character within the meaning of the contract, and as its value, as well as the refusal of the plaintiff to permit of its removal are likewise conceded, there should have been judgment for this amount in defendant's favor upon the reconventional demand. In this respect the judgment is erroneous and requires amendment. Interest on this amount can be allowed, however, only from the date of the reconventional demand for the reason that the date upon which defendant sought in vain to remove the railing is not shown in the record.

It is, therefore, ordered that the judgment of the lower Court in plaintiff's favor and against the defendants upon the main demand, be affirmed; and that, upon the reconventioal demand there be judgment in favor of the St. Charles Skating Rink Company and against the plaintiff for the sum of $100, with legal interest from February 18, 1909. The costs of the lower Court upon the main demand to be paid by the defendants, and upon the reconventional demand to be paid by the plaintiff; and the costs of appeal to be paid by plaintiff and appellee.

Judgment amended.

April 18, 1910.

## On Rehearing.

DUFOUR, J.—In our original decree we gave judgment in favor of the St. Charles Skating Rink Company, and against the plaintiff for the sum of $100, representing the value of the iron railing which, upon a formal demand, the plaintiff had declined to permit to be removed.

The point is now made, for the first time, that, although the judgment on the rent note does not recognize, and no prayer was made for recognition of the privilege and right of pledge, the lessor's right to retain the lessee's property on the premises remains unimpeached, and that such retention by him was legally justifiable.

It is otherwise where recognition is prayed for and not allowed by the judgment.

**R. C. C.., 3218; 29 An. 845; 30 An. 1148.**

Without expressing any view of our own and yielding to the force of these authorities, we must, in the absence of any prayer by the plaintiff for an amendment, allow the judgment of the lower Court which reserves defendant's right to claim the railing to stand.

The costs of appeal should be equally divided between the appellants, the sureties on the lease on the one hand and the lessee on the other.

Our previous decree is set aside and it is now ordered that the judgment appealed from be affirmed, the costs of appeal to be divided equally between the St. Charles Skating Rink Company on the one hand, and Jacob Israel and Henry Lehmann on the other.

May 30, 1910.

Writ denied by Supreme Court July 1, 1910.